UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

PODHURST ORSECK, P.A.,
as Chair Lead Counsel of the Takata Airbags
Products Liability Litigation and on behalf of the
Plaintiffs' Steering Committee of the Takata
Airbags Products Liability Litigation,

      Plaintiff,

vs.

VERISTAR, LLC,

      Defendants.
_____/

## COMPLAINT

Plaintiff Podhurst Orseck, P.A., as Chair Lead Counsel for *In re Takata Airbags Products Liability Litigation*, No. 15-md-2599 (S.D. Fla.) ("*Takata MDL*") and on behalf of the Plaintiffs' Steering Committee of the *Takata MDL* ("MDL Counsel"), files this Complaint against Defendant Veristar, LLC, and alleges the following based on personal knowledge.

### INTRODUCTION

1. This action seeks a declaratory judgment that Veristar, an e-discovery company, has violated this Court's Order of March 15, 2019 (attached as Exhibit A), appointing a different company, Planet Data Solutions, Inc., to serve as the custodian of data produced by bankrupt Takata entities (the "Takata Data"), and that Veristar is not entitled to any payment from MDL Counsel for its unauthorized acquisition or hosting of the Takata Data. Veristar's unjustified, extortionist demand for payment of more than $7 million from MDL Counsel not only violates this Court's Order but threatens the prosecution of the *Takata MDL*.

1

**PARTIES**

2. Plaintiff Podhurst Orseck, P.A. is law firm organized under the laws of and based in Florida. Podhurst Orseck, P.A., was appointed by the Court to serve as Chair Lead Counsel in the *Takata MDL* and brings this action in its capacity as Chair Lead Counsel and on behalf of MDL Counsel.

3. Veristar LLC is an Illinois limited liability company. Its members are citizens of Illinois and the District of Columbia.

**JURISDICTION AND VENUE**

4. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Plaintiff and Defendant are citizens of different States.

5. This Court has original subject-matter jurisdiction over this action also pursuant to 28 U.S.C. § 1331 and this Court's ancillary jurisdiction, because this action concerns Veristar's violation of this Court's Order of March 15, 2019, in which this Court retained exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of the Order.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this District.

7. This Court may exercise personal jurisdiction over Veristar pursuant to § 48.193, Fla. Stat., because this action arises out of and relates to Veristar, personally or through an agent, operating, conducting, engaging in, or carrying out a business or business venture in this State. Further, this Court may exercise personal jurisdiction over Veristar because it, personally or through an agent, breached a contract within this State. And this Court may further exercise personal jurisdiction over Veristar because it, personally or through an agent, engaged in

substantial and not isolated activity in the State. Veristar has, for example, issued numerous invoices to Plaintiff in Florida; has unjustifiably demanded the payment of millions of dollars from Plaintiff in Florida; and has violated the Order of this Court entered in Florida governing the *Takata MDL* that is proceeding in Florida.

## SUBSTANTIVE ALLEGATIONS

8. Veristar was formed on or around October 1, 2019. Prior to forming Veristar, its founders were members of CertaTech, a Florida limited liability company that engaged in the same business as Veristar, providing e-discovery services.

9. According to several federal complaints filed against Veristar across the country, its founders dissolved CertaTech soon after receiving a substantial investment from a third party, to retain the investment without compensating the third party, and shifted CertaTech's business to Veristar. The third-party investor sued Veristar for fraud in the Southern District of Florida, and the case eventually settled.

10. Within a month of its formation, Veristar purchased the assets of two other businesses—Franklin Data Ventures, Inc. and Nexem-Iconic, LLC—that also provided cloud hosting, cybersecurity, and e-discovery services. Those two companies subsequently sued Veristar in federal court in Illinois for breaching their asset purchase agreements by failing to make contractual incentive payments.

11. Soon after the dispute with Franklin Data and Nexem-Iconic arose, Veristar's founders created another Illinois limited liability company called Veristar Global, LLC. In a separate lawsuit filed against Veristar by a former employee, the plaintiff alleges that Veristar Global LLC was formed to evade the liabilities of Veristar to Franklin Data and Nexem-Iconic.

12. As it did with Franklin Data and Nexem-Iconic, Veristar purchased the assets of another e-discovery business, Planet Data Solutions, Inc., in early 2021.

13. As described below, Planet Data had agreed, pursuant to the Stipulated Protective Order approved by this Court on March 15, 2019, to serve as the custodian of the Takata Data, and had agreed not to charge MDL Counsel or any other party for storing and holding the Takata Data.

14. Veristar never sought nor received this Court's or MDL Counsel's permission to possess the Takata Data or serve as the custodian of the Takata Data or replace Planet Data under the Stipulated Protective Order. Nor did Veristar obtain the agreement of this Court or MDL Counsel to begin charging a fee for holding and storing the Takata Data.

15. Notwithstanding the absence of any justification, Veristar contacted MDL Counsel in September 2021 and demanded payment of millions of dollars for Veristar's hosting of the Takata Data.

16. MDL Counsel rejected Veristar's demand and explained that it violated the Stipulated Protective Order and MDL Counsel's agreement with Planet Data. MDL Counsel also instructed Veristar to remove the Takata Data from its hosting servers.

17. Undeterred, Veristar filed a motion in the Delaware bankruptcy court requesting that the Stipulated Protective Order be amended to authorize Veristar to replace Planet Data and seeking payment from MDL Counsel of more than $7 million in unauthorized fees for hosting the Takata Data that the Stipulated Protective Order did not permit it to possess in the first place.

18. While Veristar has baldly asserted that the Delaware bankruptcy court has jurisdiction over this dispute, Veristar's assertion will be challenged by MDL Counsel in the bankruptcy court on various grounds. For example, Veristar's demand for payment from MDL Counsel raises a dispute between two non-debtor parties, the resolution of which will not affect

the debtors or creditors in the bankruptcy case, will not affect the administration of the bankruptcy estate, and indeed, will have no impact whatsoever on the bankruptcy estate, such that the bankruptcy court has no jurisdiction to hear this dispute between Veristar and MDL Counsel. *See* 28 U.S.C. § 157(b); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). Even if the bankruptcy court determines that it does have jurisdiction over this dispute, however, it would be appropriate for the bankruptcy court to abstain from deciding the matter in favor of this Court pursuant to 28 U.S.C. § 1334(c)(1), as this Court has a more acute concern over fees and expenses Veristar seeks to impose on MDL Counsel appointed by this Court.

19. While MDL Counsel have responded in opposition to Veristar's baseless and procedurally defective motion in the Delaware bankruptcy court, this Court is the proper forum to resolve this dispute, because it concerns MDL Counsel, which this Court appointed and oversees, and threatens to impede the *Takata MDL* over which this Court presides.

20. Because Veristar seeks to both step into the shoes of Planet Data and also drastically alter the terms of the agreement that Planet Data accepted, it is necessary to understand the circumstances and details of Planet Data's agreement and the Stipulated Protective Order. In or around early 2018, MDL Counsel began negotiating with counsel for the bankrupt Takata Entities, as well as counsel for personal injury victims, over the preservation of Takata's records, some of which could be relevant to the pending *Takata MDL* and future actions involving personal injuries.

21. The Takata Entities had collected massive amounts of data. Most of the data was unprocessed, meaning that it could not be reviewed simply by hooking up the hard drives to a computer. Instead, it would need to be processed first and then hosted on a review platform, which would be cost-prohibitive for such a large data set.

22. The Takata Entities also were unwilling to simply hand hard drives with the data to the Plaintiffs for two reasons. First, the collected data included documents and data that may belong to Joyson Safety Systems ("JSS"), since JSS purchased Takata's non-airbag assets through the bankruptcy process. And second, the data and documents might contain attorney-client privileged material, and certain Takata entities were not willing, at the time, to waive the attorney-client privilege.

23. So, the parties negotiated a protocol that would address these issues and allow the relevant, non-privileged Takata Data to be filtered from the undifferentiated data, without incurring the costs of hosting or processing the entire data set. To make this solution work, a third-party needed to serve as the custodian of the data, without charging for holding the data, and be capable of processing and filtering discrete sets of the data upon request.

24. At first, MDL Counsel approached the vendor that was hosting the discovery that Plaintiffs had received thus far—International Legal Services ("ILS"). But ILS ultimately was unwilling to serve in this role. So, MDL Counsel considered other potential vendors and in July 2018 identified Planet Data, which had been working with another firm serving on the Plaintiffs' Steering Committee in the *Takata MDL*.

25. Planet Data's executives explained in August 2018 that Planet Data viewed the engagement as an attractive opportunity, because it exposed Planet Data to numerous large firms on the plaintiff and defense sides, as well as numerous automakers. Evidently motivated by this significant business opportunity, Planet Data made an attractive offer to serve as the third-party custodian of the data: Planet Data offered to serve in this role—in other words, to simply store the data—without charge. MDL Counsel accepted this offer.

26. This is why none of the documents presented to the Court mention a price or fee that Planet Data would be permitted to charge for serving in this role. Instead, the parties agreed that Planet Data would be authorized to charge only the "Requesting Parties" for the services of processing, filtering, uploading, and if requested, hosting the discrete data sets that they requested, according to a statement of work that each requesting party would execute with Planet Data.

27. A template for the statement of work was attached as an exhibit to the Stipulated Protective Order (attached as Exhibit B) approved by the Court. *See* Ex. 3 to Exhibit B. The statement of work set forth the fees that Planet Data would be permitted to charge Requesting Parties for these discrete services. Thus, where the Stipulated Protective Order says "PDS will store the Transferred Data at MDL Counsel's expense until the termination of the MDL Action," the agreement the parties made with respect to this provision was for Planet Data to not charge any fee for storing the Data, but only charge the pertinent Requesting Party who requested access, on a searchable database, for specified services for the discrete portions of the Data requested under a statement of work.

28. Neither MDL Counsel nor the Stipulated Protective Order contemplated that Planet Data would host the entirety of the Data on the Exego platform or an active database. Rather, the Stipulated Protective Order detailed a Protocol under which only the Data identified by a Requesting Party would be processed, filtered, and uploaded.

29. Specifically, and briefly stated, under "Protocol Step One" in the Stipulated Protective Order, a "Requesting Party," as was MDL Counsel here for example, would request access to certain Data, which was segregated by Takata "Custodian," and sign a Statement of Work, as MDL Counsel did here. Then under "Protocol Step Two," Planet Data "shall retrieve the requested Custodian's Data from its off-line storage and shall upload said Custodian's Data onto

an active PDS database." Planet Data would then cleanse that requested Data of privileged and other information and make the cleansed requested Data available to the Requesting Party on that active Planet Data database.

30. The above protocol is reflected in the template "Statement of Work" attached to the Stipulated Protective Order, which provides in part that upon a Requesting Party's request for certain Data, that Data would then be processed and loaded into the Exego platform, with expenses charged to the Requesting Party. MDL Counsel and Planet Data executed such a "Statement of Work," attached hereto as Exhibit C.

31. Planet Data, through its executives, acknowledged the above, that the only charges would be those incurred by a Requesting Party with respect to specific data. In fact, in an email exchange with MDL Counsel, Planet Data Chief Operating Officer David Cochran, stated:

> I removed the pricing terms and conditions since, as I understand it, the Takata entities will not be invoiced for the services we provide other than the $75,000 data transfer fee from the protocol. As discussed, the requesting parties will be invoiced for the data we process. This agreement also references the confidentiality agreement and protective order as well as the privilege and PSAN search protocol.

This email confirms that only "requesting parties will be invoiced for the data we process."

32. Nowhere in the Stipulated Protective Order or anywhere else is there any provision or agreement for MDL Counsel to pay the kind of global processing and storage fees that Veristar now seeks. Indeed, Planet Data performed under the terms actually agreed upon by the parties—*i.e.,* that Planet Data would not charge a fee for storing or serving as the custodian of the Data—for approximately two years and, consistent with the agreement, Planet Data never attempted to charge any party for storing or serving as the custodian of the Takata Data. Rather, Planet Data only charged Requesting Parties, such as MDL Counsel, for the specific, limited data sets that were identified in Statements of Work. And MDL Counsel paid Planet Data in accordance with

the Statements of Work it executed. This course of performance, over two years, confirms what the documents reflect—that Planet Data agreed to not charge anyone for serving as the Takata Data custodian, or for "processing" and "hosting on the Exego database" anything other than what a Requesting Party specifically requested and agreed to.

33. MDL Counsel, as a Requesting Party under the Stipulated Protective Order, sent a request to Planet Data on May 8, 2019, for data from a list of Takata custodians. Planet Data responded with a statement of work limited to the data for the specified custodians. Planet Data also invoiced MDL Counsel for just the work limited to the data for the specified custodians.

34. In fact, when Planet Data began charging MDL Counsel to host the limited data set that MDL Counsel had requested under its Statement of Work, MDL Counsel instructed Planet Data to no longer host the data set, in order to reduce the fees payable to Planet Data. In accordance with the agreement, Planet Data complied with this request, stopped hosting the data, and reduced the fees it was charging in subsequent invoices. Indeed, even when VeriStar purchased Planet Data's assets, it continued to charge MDL Counsel the reduced fees for only the data specified in the Statement of Work, making clear that it too understood the terms of MDL Counsel's agreement with Planet Data.

35. Planet Data was receiving confidential data, including data from Japan, and it was manifestly important to the parties that it was Planet Data, and only Planet Data, that handled the data. Thus, the "Agreement Regarding Cross Border Transfer of Personal Data", which is Exhibit 1 to the Stipulated Protective Order, provides at ¶ 7.2 that: "Data Recipient [*i.e.*, Planet Data] may not sub-contract the performance of its obligations under this Agreement in whole or in part to any third party without the prior written consent of Data Transferor [*i.e.*, TKJP Corporation and RTK Service LLC, collectively]." Paragraph 7.2 of that same agreement further provides that even with

such consented to assignment, Planet Data's agreement with the subcontractor has certain restrictions and that any such consented to assignment of Planet Data obligations "shall not affect [Planet Data's] duty to fulfil such obligations and [Planet Data] shall remain primarily responsible for the same." *Id*. ¶ 7.2.

36. On information and belief, prior to the transfer of the Takata Data to Veristar, neither Planet Data nor Veristar obtained the requisite written consent to any transfer of Takata Data to Veristar, nor obtained any court order amending the Stipulated Protective Order to substitute in Veristar for Planet Data.

37. MDL Counsel received all the Takata Data of interest to the Takata MDL through the completion of the statements of work that MDL Counsel was invoiced and paid for. MDL Counsel received no benefit from Veristar's continued storage or hosting of the Data after it acquired the assets of Planet Data.

38. Veristar's demand for payment of millions of dollars in fees for serving as the Takata Data custodian is contrary to the agreement reached and performed with Planet Data and the Stipulated Protective Order approved by this Court.

## COUNT I
## DECLARATORY RELIEF

39. Plaintiff hereby adopts and incorporates by reference paragraphs 1 to 38 as if fully set forth herein.

40. Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201 that Veristar's conduct alleged herein, including its possession of the Takata Data and demand for payment from MDL Counsel, violates the Stipulated Protective Order and operative agreement with Planet Data.

41. An actual, immediate, concrete controversy exists between Plaintiff and Veristar over its possession of the Takata Data and its demand for payment from MDL Counsel of millions of dollars.

42. Declaratory relief under these circumstances would serve a useful purpose of clarifying and settling the legal relations in issue and would terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of MDL Counsel, prays for relief and judgment against Veristar as follows:

A. An order declaring that Veristar's possession of the Takata Data violates the Stipulated Protective Order, as approved by this Court on March 15, 2019, and that Veristar is not entitled to charge MDL Counsel any fees for holding and storing the Takata Data;

B. Such other and further relief as is just and proper.

DATED this 8th day of November, 2022        Respectfully Submitted,

/s/ Peter Prieto
PETER PRIETO
pprieto@podhurst.com
Florida Bar No. 501492
John Gravante
jgravante@podhurst.com
Florida Bar No. 617113
Matthew Weinshall
mweinshall@podhurst.com
Florida Bar No. 84783
**PODHURST ORSECK, P.A.**
One S.E. Third Ave, Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382